FILED

2014 Dec-02  PM 02:46
U.S. DISTRICT COURT
N.D. OF ALABAMA



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **JAMES RICHARDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CV-13-S-635-NW** |
| | ) | |
| **DELTA INTERNATIONAL** | ) | |
| **MACHINERY CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, James Richards, commenced this action in the Circuit Court of Colbert County on February 28, 2013.[1]   Defendant, Delta International Machinery Corporation, properly removed it to this court on April 8, 2013.[2]   Plaintiff's claims against the other defendants named in the complaint — *i.e.*, Delta Power Equipment Corporation, Delta Machinery, and Lowe's Home Centers, Inc. — have been

---

[1] Doc. no. 1-1 (Complaint), at ECF 4–14.  "ECF" is the acronym for "Electronic Case Filing," a system that allows parties to file and serve documents electronically.  *See Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, *6 n.6 (N.D. Cal. Dec. 8, 2009).  Bluebook Rule 7.1.4 *permits* citations to the "page numbers generated by the ECF header."  *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5 (D.D.C. 2011) (citing *The Bluebook: A Uniform System of Citation* R. B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.*, 19th ed. 2010)).  Even so, the Bluebook recommends "against citation to ECF pagination in lieu of original pagination."  *Wilson*, 772 F. Supp. 2d at 257 n.5.  Thus, unless stated otherwise, this court will cite the original pagination in the parties' pleadings.  When the court cites to pagination generated by the ECF header, it will, as here, precede the page number with the letters "ECF."

[2] Doc. no. 1 (Notice of Removal).

dismissed.[3]   Thus, the only remaining defendant is Delta International Machinery Corporation ("Delta").   Plaintiff's claims against that entity arose from an injury suffered by him while operating a "Delta Shop Master Compound Miter Saw."   His amended complaint alleges five state-law causes of action:  violation of the Alabama Extended Manufacturer's Liability Doctrine; negligence; wantonness; breach of warranty; and, failure to warn.[4]   The case presently is before the court on Delta's motion to exclude the causation opinion of plaintiff's expert, Les Winter, and its motion for summary judgment.[5]   Plaintiff concedes that summary judgment is due to be entered in favor of Delta on his breach of warranty and wantonness claims.[6]   Following consideration of the pleadings, motions, and briefs, the court concludes that the defendant's motion to exclude is due to be denied, and its motion for summary judgment is due to be granted in part and denied in part.

## I.  SUMMARY OF FACTS

Plaintiff, James Richards, has been remodeling houses for about fifty years.[7]   In the course of that vocation, he has utilized various powered saws and woodworking

---

[3] *See* doc. nos. 14, 19.

[4] Doc. no. 1-1 (Complaint), at ECF 4–14.

[5] Doc. no. 36 (Motion for Summary Judgment).

[6] *See* doc. no. 43 (Response to Summary Judgment Motion), at 1.

[7] Doc. no. 38-1 (Defendant's Exhibit "A" (Richards Deposition)), at 36.

2

equipment.[8]  Even so, he had used powered miter saws on only a few occasions before

his wife purchased him the "Delta Shop Master Compound Miter Saw" at issue in this

case.[9]  The instruction manual that came packed with the machine (which Richards

testified that he had read prior to operating the saw) contains several directions for the

user to secure workpieces with safety clamps, *e.g.*:

> **SECURE THE WORKPIECE**.  Use clamps or a vise to hold the
> workpiece when practical.  Loss of control of a workpiece can cause
> injury.
>
> . . . .
>
> **DO NOT PERFORM FREE-HAND OPERATIONS**. Hold the
> work firmly against the fence and table.  Free-hand operations on a miter
> saw could cause the workpiece to be thrown at high speeds, causing
> serious injury.  Use clamps to hold the work when possible.
>
> . . . .
>
> **TIGHTEN THE TABLE CLAMP HANDLE** and any other
> clamps prior to operation.  Loose clamps can cause parts of the
> workpiece to be thrown causing serious injury.
>
> . . . .
>
> **KEEP ARMS, HANDS, AND FINGERS** away from the blade
> to prevent severe cuts.  Clamp all workpieces that would cause your hand
> to be in the "Table Hazard Zone" (within the red lines).
>
> . . . .

---

[8] *Id.* at 38–39.

[9] *Id.* at 39–41; *see also* doc. no. 43-2 (Plaintiff's Exhibit "A" (Richards Affidavit)),
¶ 2(e).

> Two holes . . . are provided in the base of the miter saw, enabling you to use the clamp . . . on either the right or left hand side of the saw blade.
>
> . . . .
>
> **KEEP HANDS OUT OF PATH OF SAW BLADE.   IF NECESSARY, CLAMP THE WORKPIECE IN PLACE BEFORE MAKING CUT**.
>
> . . . .
>
> **WARNING**.  If the workpiece causes your hand to be within the hazard zone of the saw blade, clamp the workpiece in place before making the cut.

Doc. no. 38-4 (Defendant's Exhibit "D" (Instruction Manual)), at 3–4, 15 (emphasis in original).  The Delta miter saw purchased by Richards's wife did not include a clamp.[10]

Richards used his Delta miter saw to cut some base molding on March 5, 2011, while working with his employee, Jason Harvey.[11]  Richards did not use clamps when operating the saw on that day because he believed that he could keep his hands outside of the "Table Hazard Zone" without them.[12]  After spending most of the morning cutting base molding, Richards began to make a forty-five-degree angle-cut in one of

---

[10] Doc. no. 43-2 (Plaintiff's Exhibit "A" (Richards Affidavit)), ¶ 2(f).

[11] Doc. no. 38-1 (Defendant's Exhibit "A" (Richards Deposition)), at 144–45.

[12] *Id.* at 118–19.

the boards.[13]  He placed his right hand on the saw head and his left on the board, well outside the "Table Hazard Zone."[14]  When Richards began the cut, however, the saw blade became embedded in the board and jerked the board up and down very quickly, in "just an instant."[15]  The motion pulled Richards's hand into the saw blade, and he suffered severe injuries.  The middle, ring, and small fingers of his left hand were completely severed, and his left index finger was partially severed.[16]  The index finger was later amputated.[17]  Jason Harvey witnessed the accident and called 911.[18]

## II.  MOTION TO EXCLUDE

Delta contends that the testimony of plaintiff's expert witness, Les Winter, expressing the opinion that the Delta miter saw dragged Richards's left hand from outside the saw's "Table Hazard Zone" and into the blade,[19] should be excluded.[20] Delta offers two arguments in support of its motion:  Winter is not qualified to testify about causation; and his opinion is unreliable.[21]  Analysis of those contentions must

---

[13] *Id.* at 171–72.

[14] *Id.* at 179–180.

[15] *Id.* at 193–195.

[16] *Id.* at 196–97; *see also* doc. no. 38-2 (Defendant's Exhibit "B" (Maggie Sue Richards Deposition)), at 28.

[17] Doc. no. 40-4 (Defendant's Exhibit "D" (Operative Report of Dr. Douglas Weikert)), at 1.

[18] Doc. no. 38-1 (Defendant's Exhibit "A" (Richards Deposition)), at 198.

[19] Doc. no. 40-1 (Defendant's Exhibit "A" (Winter Deposition)), at 71–73.

[20] Doc. no. 39 (Motion to Exclude).

[21] *Id.*

begin with Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.[22]  District courts are compelled to "conduct an exacting analysis of the foundations of the expert opinions to ensure they meet the standards for admissibility under Rule 702." *United States v. Abreu*, 406 F.3d 1304, 1306 (11th Cir.

---

[22] The former version of Rule 702 read as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (version prior to Dec. 1, 2011).  The Advisory Committee's comments state that the language of Rule 702 was amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules, and that the changes were intended to be stylistic only.  There was no intent to change any result in any ruling on evidence admissibility.

2005) (quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004))

(internal quotation marks and emphasis omitted).

> [T]he objective of that requirement is to ensure the reliability and
> relevancy of expert testimony.  It is to make certain that an expert,
> whether basing testimony upon professional studies or personal
> experience, employs in the courtroom the same level of intellectual rigor
> that characterizes the practice of an expert in the relevant field.

*Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (alteration

supplied).  "The inquiry . . . is a flexible one," because "[m]any factors will bear on

the inquiry, and . . . [there is no] definitive checklist or test." *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 593–94 (1993) (alterations supplied).  Even so,

factors that may be relevant for consideration include:

> (1) whether the theory or technique can be (and has been) tested, (2)
> whether the theory or technique has been subjected to peer review and
> publication, (3) in the case of a particular . . . technique, the known or
> potential rate of error, and (4) whether the theory or technique is
> generally accepted by the relevant . . . community.

*Hendrix ex rel. G.P. v. Evenflo Company, Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010)

(internal quotation marks and alterations omitted).

## A.     Winter's Qualifications

Delta contends that Les Winter is not qualified to testify about the cause of

Richards's injuries because he allegedly "has no training, education, or specialized

knowledge in accident reconstruction or biomechanics."[23]   In fact, however, he received accident reconstruction training during his studies at City College of New York, where he earned a Bachelor of Science degree in Electrical Engineering.[24]  He also obtained informal training and practical experience in accident reconstruction during his employment as a forensic engineer.[25]   Indeed, since 1996, Winter has investigated various types of accidents, including those involving miter saws, for Robson Forensic, Inc.[26]   He also obtained training in biomechanics through his employment.[27]   Further, Winter has been accepted as an expert in several cases involving miter saw injuries.[28]   Accordingly, this court finds that Winter is qualified to testify about causation.

## B.    Reliability of Winter's Testimony

Delta contends that Winter failed to review Richards's medical records, or to inspect the saw that caused his injuries, and that Winter's analysis thus is "so incomplete that he has no data from which to extrapolate an opinion."[29]   Winter's

---

[23] Doc. no. 47 (Reply in Support of Motion to Exclude), at 4.

[24] Doc. no. 40-3 (Les Winter Resume), at ECF 6; doc. no. 40-1 (Defendant's Exhibit "A" (Winter Deposition)), at 22–26.

[25] Doc. no. 40-3 (Les Winter Resume), at ECF 4; doc. no. 40-1 (Defendant's Exhibit "A" (Winter Deposition)), at  21.

[26] Doc. no. 40-3 (Les Winter Resume), at ECF 3–4.

[27] Doc. no. 40-1 (Defendant's Exhibit "A" (Winter Deposition)), at 21.

[28] *Id.* at 34–35.

[29] Doc. no. 39 (Motion to Exclude), at 15–17.

failure to review Richards's medical records does not render his testimony unreliable, however.  He examined photographs of Richards's injuries, viewed a video recording of Richards's deposition, and read the statement and deposition of James Harvey.[30]  All of those items serve as evidence of the nature and cause of Richards's injuries.  Although reviewing Richards's medical records might have shed more light on the extent of his injuries, Winter's failure to do so does not render his testimony either unreliable or inadmissible.  It simply affects the weight a jury may accord it.

Similarly, Winter's failure to physically inspect the saw that injured Richards does not render his testimony unreliable.  As previously noted, Winter viewed a video recording of Richards's deposition, during which Richards and an attorney discussed and demonstrated on an exemplar saw the events leading to the incident in question.[31]  Winter also reviewed the deposition of the designer of the miter saw.[32]  Further, Winter has many years of experience in operating miter saws, investigating miter saw injuries, and testifying as an expert in cases involving miter saws.[33]  Therefore, his physical inspection of the saw at issue is not necessary to render his testimony reliable.

---

[30] Doc. no. 41-1 (Plaintiff's Exhibit "B" (Winter Report)), at 1.

[31] *Id.*

[32] *Id.*

[33] Winter has owned at least two miter saws. Doc. no. 40-1 (Defendant's Exhibit "A" (Winter Deposition)), at 54.

Finally, Delta contends that Winter's failure to test his causation theory on an exemplar saw makes his opinion unreliable.[34]  Winter's "theory," however, is little more than a straightforward application of generally accepted principles of physics, as he explained in the following colloquy from his deposition:

> A:    First of all, you have the saw rotated to, I believe that's 45 degrees.  That means the forces transmitted from the blade are in the same alignment, 45 degrees.  A force at 45 degrees can be resolved into two separate forces, one straight back at 90 [degrees] and one along the fence at zero [degrees], which means [that, as in this photograph depicting the placement of Richards's hand on a workpiece next to the saw] . . .  the blade is imparting force to the left of the saw.  If the saw blade manages to get embedded in the work, it will — instead of severing the workpiece into two pieces, it will pull the workpiece possibly into the space between the right and left fence.  Or, if it becomes embedded and the head of the saw is lifted and takes the end of the workpiece with it, then the workpiece will be thrown to the left standing in front of the saw and backwards.  So if the operator's hand is on the workpiece and maintains contact, his hand is going to be drawn in this picture from where it is to the left and backwards, which is into the blade.
>
>          . . . .
>
> Q:    Have you done any testing of that in this case?
>
> A:    In this case, no.
>
> Q:    How would you test that?  Could you test it?
>
> A:    Well, the physics are obvious, I mean from an engineering standpoint.  If I'm pulling you to the left and pushing you back

---

[34] Doc. no. 40 (Motion to Exclude), at 18–20.

> with the same force and you move, you are going to move on a diagonal.  So we know that.  We know that a way that his hand can be moved without doing any experiments, from basic Newton[']s laws, are if the force has a direction and acts on the body, the body will tend to move in the direction of the force, [if] there is nothing else around.

Doc. no. 40-1 (Defendant's Exhibit "A" (Winter Deposition)), at 71–73 (alterations supplied).  Rule 702 does not require Winter to test whether saw blades can become embedded in wood, nor does it require him to test basic and generally accepted principles of Newtonian physics.  *See Rockhill-Anderson v. Deere & Co.*, 994 F. Supp. 2d 1224, 1241 (M.D. Ala. 2014) (Watkins, J.).  Accordingly, his testimony will not be excluded based upon his failure to test his causation theory.

In summary, Delta's motion to exclude the causation testimony of Les Winter is due to be denied.

### III.  MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In

making this determination, the court must review all evidence and make all reasonable

inferences in favor of the party opposing summary judgment." *Chapman v. AI

Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of

Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving

party are not unqualified, however. "[A]n inference is not reasonable if it is only a

guess or a possibility, for such an inference is not based on the evidence, but is pure

conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321,

1324 (11th Cir. 1983) (alteration supplied). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary
> judgment unless that factual dispute is *material* to an issue affecting the
> outcome of the case. The relevant rules of substantive law dictate the
> materiality of a disputed fact. A genuine issue of material fact does not
> exist unless there is sufficient evidence favoring the nonmoving party for
> a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration

supplied). *See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251–52 (1986)

(asking "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law").

Here, Delta contends that all of the claims asserted in Richards's amended

complaint are founded upon the defendant's alleged failure to warn.  Therefore, Delta's motion for summary judgment addresses only the failure-to-warn claims,[35] even though Richards responded that his amended complaint also asserts claims founded upon Delta's failure to include clamps with the miter saw sold to his wife.[36] Indeed, a reading of the amended complaint reveals that it asserts claims based upon Delta's alleged failure to include clamps with the miter saw.[37]  Accordingly, only Richards's failure-to-warn claims are addressed in the following discussion.

Delta first argues that Delta had no duty to warn Richards about the use of clamps because Richards was "well-versed in carpentry, [and] knew about the possible risks and dangers related to operating [the saw]."[38]  In that regard, the Alabama Supreme Court has held that a manufacturer has a duty to warn only "of those dangers which the owner or user would not be aware of under the particular circumstances of his use of the product in question." *Gurley v. American Honda Motor Company, Inc.*, 505 So. 2d 358, 362 (Ala. 1987).  "The objective of placing a duty to warn on the manufacturer of a product is to acquaint the user with a danger of which he is not

---

[35] Doc. no. 37 (Summary Judgment Brief), at 3.

[36] *See* doc. no. 43 (Response to Summary Judgment Motion), at 5; doc. no. 48 (Reply in Support of Summary Judgment), at 4–5.

[37] Doc. no. 20 (Amended Complaint), ¶ 5 ("The subject Saw was designed, manufactured, sold and distributed with inappropriate and/or inadequate safety devices and features.")

[38] Doc. no. 37 (Summary Judgment Brief), at 15 (alterations supplied).

aware." *Id.* at 361.

Nevertheless, it also is well-settled that "the existence of a duty to warn and the adequacy of a warning are questions of fact for the jury." *Toole v. McClintock*, 999 F.2d 1430, 1433 (11th Cir. 1993) (quoting *State Farm Fire & Casualty Co. v. J.B. Plastics*, 505 So. 2d 1223, 1227 (Ala. 1987)); *see also Deere & Co. v. Grose*, 586 So. 2d 196, 199–200 (Ala. 1991) (holding that question of adequacy of manufacturer's warning to buyer of a tractor to install a safety bar before use was properly submitted to a jury); *Dunn v. Wixom Brothers*, 493 So. 2d 1356, 1360 (Ala. 1986) (holding that question of adequacy of manufacturer's warning to experienced user of a motorcycle about the dangers of installing handlebar-mounted fairing was properly submitted to a jury).

Thus, this court cannot decide, as a matter of law, that Richards was aware of the danger that his hand, initially placed well outside the "Table Hazard Zone," might be pulled into the saw blade in "an instant."[39]  Nor can the court decide that Richards should have been aware of such a danger, based upon his experience in carpentry.  *See Dunn*, 493 So. 2d at 1360.  Accordingly, that argument fails.

Delta next argues that summary judgment is appropriate because Richards cannot prove that an "alternative warning would have altered his conduct leading up

---

[39] Doc. no. 38-1 (Defendant's Exhibit "A" (Richards Deposition)), at 193–195.

14

to the accident."[40]  As the moving party, however, *Delta* bears the burden at the

summary judgment stage of proving that, as a matter of law, an alternative warning

*would not have altered Richards's conduct*.  Delta has failed to do so, as its argument

relies almost entirely on the disputed testimony of Jason Harvey.[41]  Accordingly, this

argument also fails.

Delta next argues that Richards cannot prove causation because there is no

evidence, beyond mere speculation, that the saw "can actually cause a workpiece to

move the way [Richards] is suggesting," and that clamps are necessary for all cuts

made with the saw.[42]  On the contrary, Richards has offered his own testimony as well

as that of Jason Harvey, who witnessed the incident, to prove that the saw pulled

Richards's hand into the saw blade.[43]  This evidence is based upon direct observation,

not mere speculation.

Finally, Delta argues that Richards's expert witness's testimony should be

excluded, and that without that testimony, there is no evidence that the Delta's

allegedly inadequate warning about the use of clamps was the but-for cause of

---

[40] Doc. no. 37 (Summary Judgment Brief), at 16.

[41] *Id.* at 16–18; doc. no. 38-1 (Plaintiff's Exhibit "A" (Richards Affidavit)), ¶¶ 2(a)–(b), (d).

[42] Doc. no. 37 (Summary Judgment Brief), at 22 (alteration supplied).

[43] *See* doc. no. 38-1 (Defendant's Exhibit "A" (Richards Deposition)), at 181, 193–95; doc. no. 38-5 (Defendant's Exhibit "E" (Harvey Deposition)), at 25, 30.

Richards's injuries.[44]  The court already has concluded that Les Winter's testimony is admissible to prove causation and, therefore, this argument also fails.

Accordingly, Delta's motion for summary judgment as to plaintiff's failure-to-warn claims is due to be denied.

### IV.  CONCLUSION AND ORDERS

In summary, the motion of defendant, Delta International Machinery Corporation, to exclude the causation opinion testimony of Les Winter is DENIED. Delta's motion for summary judgment is GRANTED in part and DENIED in part: that is, the motion is GRANTED with regard to plaintiff's claims for breach of warranty and wantonness,[45] and those claims are DISMISSED with prejudice.  On the other hand, the motion is DENIED with regard to all other claims asserted in the amended complaint.  The case will be set for pre-trial conference by separate order.

DONE and ORDERED this 2nd day of December, 2014.

_____
United States District Judge

---

[44] Doc. no. 37 (Summary Judgment Brief), at 22.

[45] *See supra* note 6 and the accompanying text.